IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

ELTON JOHNSON,
ADC #113294                                                                                    PLAINTIFF

VS.                                              5:08CV00038JLH/JTK

RICK TONEY, et al.                                                                       DEFENDANTS

## PROPOSED FINDINGS AND RECOMMENDATIONS

### INSTRUCTIONS

The following recommended disposition has been sent to Chief United States District Judge

J. Leon Holmes.    Any party may serve and file written objections to this recommendation.

Objections should be specific and should include the factual or legal basis for the objection.  If the

objection is to a factual finding, specifically identify that finding and the evidence that supports your

objection.  An original and one copy of your objections must be received in the office of the United

States District Court Clerk no later than fourteen (14) days from the date of the findings and

recommendations.   The copy will be furnished to the opposing party.    Failure to file timely

objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or

additional evidence, and to have a hearing for this purpose before the District Judge, you must, at

the same time that you file your written objections, include the following:

1.       Why the record made before the Magistrate Judge is inadequate.

2.       Why the evidence proffered at the hearing before the District
         Judge (if such a  hearing is granted) was not  offered at  the
         hearing before the Magistrate Judge.

1

3.      The detail of any testimony desired to be introduced at the hearing before the District Judge in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

Clerk, United States District Court
Eastern District of Arkansas
600 West Capitol Avenue, Suite A149
Little Rock, AR 72201-3325

## **DISPOSITION**

### I.  Introduction

This matter is before the Court on the defendants' motion for summary judgment (Doc. No. 153).  Plaintiff filed a response in opposition to the motion (Doc. No. 163).

Plaintiff is a state inmate incarcerated at the Diagnostic Unit of the Arkansas Department of Correction (ADC).  He filed this action pursuant to 42 U.S.C. § 1983 against defendants, alleging deliberate indifference to his health and safety needs in violation of his Eighth Amendment right, while he was incarcerated at the Jefferson County Jail Facility (JCJF) from 2005-2008.[1]  Several claims and defendants were previously dismissed from this lawsuit, and the remaining defendants are Jerry Gasaway, Assistant Warden of the JCJF, Robert Hamer, Maintenance Supervisor of the JCJF, and Gary Musselwhite, a Major at the Unit.  Plaintiff asks for monetary and injunctive relief from the defendants.

_____

[1]The JCJF is now known as the Randall Williams Unit of the ADC.

2

Specifically, plaintiff alleges that all three defendants were deliberately indifferent to cold cell temperatures, defendant Hamer was deliberately indifferent to a leak in plaintiff's cell ceiling, and defendant Gasaway retaliated against him by refusing to ensure he received appropriate medical treatment.  Plaintiff claims to suffer from arthritis, degenerative disc disease of the lower lumbar spine, and radiculopathy, and claims his medical condition was greatly aggravated by the defendants' failure to maintain proper cell temperatures, a dry cell, and proper medical care.

## II.  Summary Judgment Motion

A.  Defendants' Motion

1) Cold temperatures - In support of their motion, defendants state plaintiff fails to support an Eighth Amendment claim against them on this issue, because he can not show that they deliberately maintained unconstitutionally cold temperatures in his cell.  Defendants state the temperatures in the barracks where plaintiff was incarcerated are controlled by a thermostat which is secured by a locked box in an area where inmates are not permitted.  Defendants provide an affidavit of defendant Hamer, who states the temperature logs for that area in 2005-2008 show that the summer and winter temperatures consistently ranged from 68-72 degrees, in accordance with prison policy.  Doc. No. 153, Exs. B, D.  Defendant Hamer states while the heating and air conditioning systems failed occasionally during the time period at issue, repairs were completed within a day or two and functionality was restored.  He also states that except for an unanticipated outage,  he is not aware of any times when the temperatures were unreasonably below the 68-72 degree temperature range set by prison policy.

Defendants also note that plaintiff was permitted to possess two blankets in his cell, together with thermal underwear, clothing, socks and his coat.   Defendants state plaintiff provides no

3

evidence that they deliberately caused the temperatures to be low or caused plaintiff to be cold, or that the alleged cold temperatures aggravated plaintiff's arthritic condition. Defendants Gasaway and Musselwhite also submit affidavits stating they were unaware of unreasonably cold temperatures in the barracks during plaintiff's incarceration. Doc. No. 153, Exs. C, E.

2) Leaking cell - Defendant Hamer states in his affidavit that he was contacted in 2006 after plaintiff filed a grievance complaining about a leak in his cell. According to his response at that time, he had received no complaints about a ceiling leak in plaintiff's barracks during the three months prior to that, and had repaired a leak in November 2005. Defendant also states further work was conducted on the roof above plaintiff's cell in March 2006 following receipt of plaintiff's grievance, and that plaintiff does not provide any proof that defendant deliberately acted to allow the leak to continue, or deliberately refused to fix the leak. Defendant also notes plaintiff never requested to be reassigned to a different barrack or cell in order to avoid the alleged leak, and provides no evidence that defendant's alleged failure to fix the leak was motivated by retaliation for the filing of grievances about the cold temperatures.

3) Medical indifference/retaliation - Defendant Gasaway states in his affidavit that he is not a trained medical care provider, and was not responsible for medical treatment of inmates while serving as deputy warden of the JCJF. He also states he was unaware of any situation in which plaintiff was denied access to medical treatment by Correctional Medical Services, Inc. (CMS) personnel. Finally, he notes that despite plaintiff's complaints in his grievances, plaintiff was provided an MRI test on two occasions, in 2007 and 2008.

With respect to all these claims, defendants state in their motion that plaintiff can not show that the alleged deprivations resulted in the "denial of the minimal civilized measure of life's

4

necessities", or that they acted with deliberate indifference to "an excessive risk to inmate health or safety," citing Farmer v. Brennan, 511 U.S. 825, 837 (1994) and Williams v. Delo, 49 F.3d 442, 445 (8th Cir. 1995). Furthermore, defendants Hamer and Gasaway state plaintiff can not support his retaliation claims against them because he can not show that the defendants took an adverse action against him for the purpose of deterring him from filing grievances, citing Lewis v. Jacks, 486 F.3d 1025, 1028 (8th Cir. 2007).

B.  Plaintiff's Response

1) Cold temperatures - In his response, plaintiff states defendants deprived him of the constitutional right to an identifiable human need, which is warmth, and that defendants were aware of, yet completely disregarded, the fact that plaintiff was exposed to extremely cold temperatures. Plaintiff alleges defendants permitted other inmates to compile the temperature logs, and that those inmates falsified the logs so they could maintain colder temperatures in the barracks.  Plaintiff also alleges the defendants were aware that the thermostat was located in a lockbox which did not actually lock, and was easily manipulated so that maintenance inmates could adjust the temperatures. In his deposition, plaintiff stated at one time he had a temperature gauge in his cell which showed that the temperature ranged from 60-65 degrees, although he was unsure about the time period in which that occurred.  Doc. No. 153, Ex. A.  Finally, plaintiff states courts have held that summary judgment is not appropriate when there is a question about the severity of cold cell temperatures and the length of time the inmate endured such, citing Dixon v. Godinez, 114 F.3d 640, 643 (7th Cir. 1997) and Sampson v. Berks County Jail, 171 Fed.Appx,. 382, 385 (3d Cir. 2006).

2) Leaking ceiling - With respect to this issue, plaintiff states the ceiling above his rack (bed) leaked every time it rained for at least thirty minutes, and that despite his numerous complaints, the

ceiling was fixed on only one occasion.  Plaintiff disputes that defendant Hamer responded to his requests in a prompt fashion and states that despite defendant's attempts, the ceiling continued to leak.  Plaintiff states this is another example of an identifiable human need of which he was deprived, and that summary judgment is improper.

3) Medical indifference/retaliation - Plaintiff alleges he suffered from on-going back problems, re-injured his back lifting books in 2003,  and was confined to a wheelchair in March, 2004.  He stated in his deposition that a CMS physician, Dr. Ifediora, submitted a referral for a MRI in 2005, but that the referral was denied by another CMS physician, Dr. Anderson, for lack of sufficient criteria.  He complained in the deposition that while he was consistently seen in the infirmary for his complaints, the physicians were always changing, and  that the numerous grievances he filed concerning the need for a MRI in order to evaluate the source of his pain, were disregarded.  In the response to defendants' motion, plaintiff  states four years transpired between the time he injured his back and the time he received the MRI in 2007, and he suffered much pain. Plaintiff alleges his medical condition was sufficiently serious, and defendant Gasaway was aware of his condition, because plaintiff was issued a wheelchair, an egg-crate mattress, and multiple prescriptions.  However, plaintiff states that despite this knowledge, defendant Gasaway permitted four years to pass before plaintiff was provided with a MRI, in 2007.  Plaintiff states these facts support his claim of deliberate indifference against defendant.

C.  Standard of Review

Pursuant to Fed.R.Civ.P. 56©), summary judgment is appropriate if the record shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  See  Dulaney v. Carnahan, 132 F.2d 1234, 1237 (8th Cir. 1997).  "The moving party bears

the initial burden of identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Webb v. Lawrence County, 144 F.3d 1131, 1134 (8th Cir. 1998).  "Once the moving party has met this burden, the non-moving party cannot simply rest on mere denials of allegations in the pleadings; rather, the non-movant must set forth specific facts showing that there is a genuine issue for trial." Id. at 1135.  Although the facts are viewed in a light most favorable to the non-moving party, "in order to defeat a motion for summary judgment, the non-movant cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit." Id.

In addition, as noted by the defendants in their motion, to establish that his conditions of confinement violated the Eighth Amendment, plaintiff must show that "the alleged deprivation is sufficiently serious that it denies 'the minimal civilized measure of life's necessities,'", and "the prison officials were deliberately indifferent to 'an excessive risk to inmate health or safety.'" Williams v. Delo, supra, 49 F.3d at 445.

D.  Analysis

1) Cold cell temperatures - Plaintiff claims to have suffered from unreasonably cold temperatures.  Other than his deposition testimony that at one time the temperatures ranged from 60-65 degrees, he provides no other proof to dispute the temperature logs submitted by the defendants. He does submit copies of grievances he submitted in which he complained about cold temperatures, on February 22, 2006, November 7, 2006, October 17, 2007, December 18, 2007, and January 1, 2008 (Doc. No. 163, Ex. E).  According to the responses to these grievances, the temperature logs were consulted and the temperatures were routinely found to be within the range of 68-72 degrees.

The Court notes that in the November 7, 2006 grievance, plaintiff complained that the temperature was not at 72 degrees, and in the February 22, 2006 grievance, he complained that the temperatures were well below 70 degrees.

In Farmer v. Brennan, 511 U.S. 825, 832 (1994), the Court stated that humane conditions of confinement include "adequate clothing, shelter, and medical care."  However, the Court also noted that the "Constitution does not mandate comfortable prisons."  In order to support an Eighth Amendment violation, plaintiff must prove an objective and subjective element.  Revels v. Vincenz, 382 F.3d 870, 875 (8th Cir. 2004), citing Wilson v. Seiter, 501 U.S. 294, 298 (1991).  The "defendant's conduct must objectively rise to the level of a constitutional violation by depriving the plaintiff of the minimal civilized measure of life's necessities.  The defendant's conduct must also reflect a subjective state of mind evincing deliberate indifference to the health or safety of the prisoner."  Revels, supra, 382 F.3d at 875.  In assessing whether cold cell temperatures constitute cruel and unusual punishment, the courts have considered factors including "the severity of the cold; its duration; whether the prisoner has alternative means to protect himself from the cold; the adequacy of such alternatives; as well as whether he must endure other uncomfortable conditions as well as cold."  Dixon v. Godinez, supra, 114 F.3d 640.

The Court has examined the Dixon case as cited by the plaintiff, and finds that it is distinguishable from the present case.  In Dixon, the inmate plaintiff complained about cell temperatures in the range of 40 degrees in the winter, causing condensation on the walls to freeze. In reversing the lower court's decision  to grant  summary judgment on the cold temperature claim, the appellate court  noted that  defendants submitted no evidence refuting either the allegation that ice regularly formed on cell walls or that the average temperature was forty degrees.  114 F.3d at

642.  The court also noted that the lower court did not address the question concerning whether defendants were deliberately indifferent.

In this particular case, while the Court finds some dispute of fact over the actual temperatures in the barracks, the Court finds that this dispute alone is not sufficient to render summary judgment improper in this particular case.  Even if the Court were to assume that the temperatures were not at an appropriate level, Constitutionally-speaking, plaintiff has not provided any evidence that defendants were substantially aware of unconstitutional temperatures and disregarded that to his detriment.  In addition, while plaintiff alleges that the logs were falsified and at one point he gauged the temperature between 60-65 degrees, plaintiff provides no evidence or allegations to support a finding of deliberate indifference by the defendants to an excessive risk to his health or safety.  In fact, his complaints about the temperatures in the grievances he submitted are that the temperatures were below 70 or 72 degrees, whereas the normal range was 68-72 degrees.   According to their affidavits, defendants relied on the temperature logs in maintaining the temperatures in the barracks, and acknowledged that when outside temperatures fluctuated drastically, or outages occurred,  they acted to ensure that the temperature returned to normal as soon as possible.  In addition, while plaintiff produces copies of some medical records in which he complained of his cold cell temperatures, plaintiff produces only one Condensed Health Services Encounter Form, dated December 26, 2007, in which he complained about the cold cell temperatures and was diagnosed with a common cold (Doc. No. 163, Ex. C).

In light of such, the Court finds that defendants are entitled to judgment as a matter of law on this issue.

2) Leaking ceiling - Similarly, plaintiff provides no evidence of deliberate indifference or retaliation on the part of defendant Hamer.  Although plaintiff alleges the leak was not effectively repaired, he provides no evidence that defendant was on notice of the continued leak and refused to act to correct it.  Therefore, the Court finds as a matter of law that summary judgment is appropriate with respect to this claim.

3) Medical indifference/retaliation - According to the "Condensed Health Services Encounter Forms" which were submitted by plaintiff in support of his response, he was seen on numerous occasions from 2006-2008, in which he presented  numerous various complaints such as back and leg pain, sinus problems, and constipation.  Plaintiff was treated on all those occasions with medications and other instructions.  Plaintiff also acknowledges in his summary judgment response that he was provided with a wheelchair, egg crate mattress, and numerous prescriptions during his incarceration at the JCJF.  Prison physicians are entitled to exercise their medical judgment, and "do not violate the Eighth Amendment when, in the exercise of their professional judgment, they refuse to implement a prisoner's requested course of treatment."  Long v. Nix, 86 F.3d  761, 765 (8th Cir. 1996 ).  In addition, as noted above, plaintiff stated in his deposition that prior referrals for MRI tests were rejected by a CMS employee and not by defendant Gasaway, an ADC official.   In Keeper v. King, 130 F.3d 1309 (8th Cir. 1997), the court stated that ADC defendants who are not involved in medical treatment decisions can not be held liable for the medical staff's diagnosis and treatment. In this particular case, defendant Gasaway states in his affidavit that as Deputy Warden, he was not responsible for medical treatment of inmates, and that when an inmate notified him of a medical treatment complaint, he would refer the matter to CMS medical personnel.  He also states he was unaware of any situation in which plaintiff was denied access to medical care and treatment.

10

The plaintiff alleges that it took four years before he was provided with a MRI examination. However, he provides no proof that defendant Gasaway acted with deliberate indifference, nor does he provide proof that a delay in his medical treatment resulted in a detrimental effect to his health, as set forth in Beyerbach v. Sears, 49 F.3d 1324 (8th Cir. 1995). Therefore, the Court finds defendant is entitled to summary judgment on this issue. Accordingly,

IT IS, THEREFORE, ORDERED that defendants' motion for summary judgment (Doc. No. 153) is hereby GRANTED, and plaintiff's complaint against defendants is DISMISSED with prejudice.

IT IS SO ORDERED this 28th day of July, 2010.

_____
United States Magistrate Judge